## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUTE 92 MEDICAL, INC.,<br>a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>Q'APEL MEDICAL, INC.,<br>a Delaware corporation<br><br>Defendant. | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Route 92 Medical, Inc. ("Route 92 Medical" or "Route 92") hereby complains of Defendant Q'Apel Medical, Inc. ("Q'Apel"), and alleges as follows:

### I. THE PARTIES

1.     Plaintiff Route 92 Medical is a Delaware corporation having its principal place of business at 155 Bovet Rd., Suite 100, San Mateo, California 94402.

2.     Upon information and belief, Defendant Q'Apel Medical, Inc. is a Delaware corporation having its principal place of business at 4245 Technology Drive, Fremont, California 94538.

### II. JURISDICTION AND VENUE

3.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, more particularly, 35 U.S.C. §§ 271 and 281.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

1

5.      This Court has personal jurisdiction over Defendant because Defendant is an entity organized and existing under the laws of the State of Delaware.

6.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendant is an entity organized and existing under the laws of the State of Delaware, and therefore resides in the District of Delaware.

### III. STATEMENT OF THE CASE

7.      This action seeks relief for Defendant's willful infringement of Route 92 Medical's patents.

### IV. STATEMENT OF FACTS

8.      Route 92 Medical is a medical technology company specializing in neurovascular intervention.  Route 92's technologies improve clinical outcomes for patients, such as patients suffering from acute ischemic stroke.

9.      Acute ischemic stroke usually occurs when a cerebral artery in the brain is occluded, or blocked, restricting delivery of fresh oxygenated blood from the heart and lungs to the brain.  Such blockages are usually caused by a blood clot lodging in the cerebral artery.  If the blockage is not quickly resolved, the blockage may cause neurological damage or death. Therefore, immediate treatment is critical.

10.      The primary therapies for treating acute ischemic stroke and restoring blood flow to the brain include the administration of drugs, mechanical removal of the blockage, or often a combination of the two.  Mechanical removal of the blockage is often referred to as a thrombectomy.

11.      One form of mechanical therapy involves a retrieval device, called a stent retriever. A physician advances a series of catheters through the patient's arteries to the site of the clot in the

cerebral artery, where the retrieval device captures the clot. The physician then removes the catheters from the patient, along with the retrieval device and clot. Another form of mechanical therapy involves aspiration. A physician inserts a large bore aspiration catheter at an access site and maneuvers it through complex anatomy to the site of the clot. A physician then applies suction to remove the clot.

12.     These mechanical therapies—retrieval and aspiration—often require a series of guidewires, microcatheters, and intermediate catheters to guide the treatment device from an access site, through the complex anatomy, and to the site of the clot.

13.     Before Route 92 Medical's technology, existing systems and methods for treating acute stroke suffered from a severe problem—the amount of time required to restore blood flow to the brain. Restoration of blood flow through the administration of drugs often took hours, during which time brain tissue is deprived of adequate oxygen. And restoration of blood flow via mechanical removal was often not possible due to an inability to navigate the treatment devices through the challenging anatomy of the cerebral arteries. Due to these challenges, there was often a high risk of permanent injury to the brain tissue. Indeed, from 2015–2020, stroke was the fifth leading cause of death in the United States each year. National Center for Health Statistics, *Leading Causes of Death for 2015–2020*.

14.     In 2007, Dr. Tony Chou founded Silk Road Medical to prevent and treat stroke. Specifically, Silk Road Medical achieved many major milestones in its research and development. For example, it developed and commercialized the Transcarotid Artery Revascularization (TCAR) technology, an endovascular procedure that uses neuroprotective blood flow reversal and stenting for long-term plaque stabilization and stroke prevention. While at Silk Road Medical, Dr. Chou also began work on other neurovascular systems for stroke treatment.

15.     In 2015, to continue that work on the neurovascular systems for stroke treatment, while Silk Road Medical continued to focus on the TCAR type procedures and transcervical approaches, Dr. Chou founded Route 92 Medical.  Route 92 Medical's inventors further developed an innovative streamlined stroke treatment system, thereby reducing the time required and consistently allowing the system to navigate the patient's anatomy and restore blood flow to the brain.

16.     Dr. Chou's efforts, along with others, have led to multiple patents, including U.S. Patent Nos. 10,213,582 ("the '582 patent") (filed December 19, 2017), 10,456,555 ("the '555 patent) (filed December 28, 2017), 10,646,239 ("the '239 patent") (filed August 30, 2018), 11,871,944 ("the '944 patent) (filed July 10, 2020), and 11,925,770 ("the '770 patent") (filed April 7, 2023) (collectively "the Asserted Patents").  Dr. Chou and Michi Garrison are inventors of the '582 patent, the '239 patent, and the '944 patent.  Dr. Chou, Michi Garrison, and Scott Wilson are inventors of the '555 patent.  Dr. Chou, Scott Wilson, and Vera Shinsky are inventors of the '770 patent.

17.     Route 92's efforts have also led to multiple FDA-approved medical devices, including Route 92's FreeClimb® reperfusion systems with Tenzing® delivery catheters.  *See* Route 92 Medical News, https://www.route92medical.com/news/.  Physicians have used Route 92's FreeClimb® with Tenzing® to successfully treat blockages in under 10 minutes.  *See* Route 92 Medical Clinical Evidence, https://www.route92medical.com/clinical-evidence/; *see also* Route 92 Medical Announces Impressive Clinical Results for its Tenzing® Technology, https://www.route92medical.com/route-92-medical-announces-impressive-clinical-results-for-its-tenzing-technology/.

4

18.     Clinical studies have touted the advance in treatment that the Tenzing® Technology allows.  One study explained that Route 92's Tenzing Delivery Catheter is "a novel navigation support catheter" demonstrating "high rates of technical success."  Daniel Tonetti et al., *Novel Tenzing 7 Delivery Catheter for Thrombectomy in Acute Stroke: A Clinical Multicenter Experience*, STROKE: VASCULAR AND INTERVENTIONAL NEUROLOGY, Aug. 21, 2023, https://www.ahajournals.org/doi/10.1161/SVIN.123.000940.     Another study "demonstrated consistent (100%) access to the target LVO [large vessel occlusion] when using the Tenzing 7 delivery catheter with FreeClimb 70 access catheter, without the use of a SR [stent retriever] for anchoring and without procedural complication."  Fabio Settecase et al., *Improved catheter delivery for aspiration thrombectomy using Tenzing 7 ledge reducing catheter and FreeClimb 70*, NEW DEVICES AND TECHNOLOGY, May 8, 2023, https://journals.sagepub.com/doi/epub/10.1177/15910199231177754.   That study went on to conclude that "the Tenzing 7 delivery catheter in AT [aspiration thrombectomy] significantly reduces the shelf, or ledge, between an inner delivery catheter and outer aspiration catheter and likely reduces tracking force necessary to advance an aspiration catheter."  *Id*.

19.     In November 2016, while Route 92 Medical continued working on the Tenzing® Technology, it engaged Jodie Fam as a consultant.  Route 92 Medical and Fam entered into a series of subsequent consulting agreements, culminating in a consulting agreement dated July 20, 2020. Fam consulted on clinical, regulatory, technical, quality, product development, marketing, market development, and scientific matters related to pharmacologic and mechanical treatment of stroke. Fam was also engaged to assist the Route 92 product development team in the establishment and maintenance of relationships with medical device vendors.

20.      In the July 2020 consulting agreement, Fam agreed to consult on matters related to business development.

21.      During her time with Route 92, Fam attended meetings, including Board of Director meetings where she learned about Route 92's IP and patent strategy, among other confidential information.  Fam also attended several investor meetings, where confidential information was discussed.  She was also part of the effort when the first human clinical cases were performed.  Fam assisted in training physicians in using the Tenzing device including the techniques to deliver the Tenzing successfully.  Fam was also exposed to the confidential iterations of the designs of Tenzing technology to meet clinical needs.

22.      While consulting for Route 92 Medical, Fam worked directly with Dr. Chou and with Route 92's clinical, research and development, and executive teams.  Fam was heavily involved with the development and testing of the Tenzing delivery catheter including attending the first use of the Tenzing catheter in a patient in Germany in 2018 and redesigning the catheter based on the confidential findings of this early clinical experience.  Fam was also part of the company's senior staff and clinical use and evaluation team.

23.      Fam continued to consult with Route 92 Medical until May 10, 2021.

24.      In May 2021, Fam joined Q'Apel as Vice President and General Manager, International.  *See* https://qapelmedical.com/qapel-medical-welcomes-jodie-fam-vice-president-and-general-manager-international/.

25.      In 2023, after Fam's significant exposure to Route 92's technology, strategy and plans, Q'Apel announced the release of its Hippo featuring Cheetah aspiration system ("Hippo-Cheetah system") for treating stroke.

26. In July 2024, Q'Apel named Jodie Fam Chief Executive Officer. *See* https://qapelmedical.com/qapel-medical-announces-leadership-transition/.

27. Q'Apel's Hippo-Cheetah system includes Route 92 Medical's technology and infringes Route 92 Medical's patents.

## V. THE PATENTS-IN-SUIT

28. Route 92 Medical is the owner by assignment of U.S. Patent No. 10,213,582 ("the '582 patent") titled "Methods and systems for treatment of acute ischemic stroke," which the United States Patent and Trademark Office lawfully and duly issued on February 26, 2019. A true and correct copy of the '582 patent is attached hereto as Exhibit 1.

29. Route 92 Medical is the owner by assignment of U.S. Patent No. 10,456,555 ("the '555 patent") titled "Rapid aspiration thrombectomy system and method," which the United States Patent and Trademark Office lawfully and duly issued on October 29, 2019. A true and correct copy of the '555 patent is attached hereto as Exhibit 2.

30. Route 92 Medical is the owner by assignment of U.S. Patent No. 10,646,239 ("the '239 patent") titled "Methods and systems for treatment of acute ischemic stroke," which the United States Patent and Trademark Office lawfully and duly issued on May 12, 2020. A true and correct copy of the '239 patent is attached hereto as Exhibit 3.

31. Route 92 Medical is the owner by assignment of U.S. Patent No. 11,871,944 ("the '944 patent) titled "Methods and systems for treatment of acute ischemic stroke," which the United States Patent and Trademark Office lawfully and duly issued on January 16, 2024. A true and correct copy of the '944 patent is attached hereto as Exhibit 4.

32. Route 92 Medical is the owner by assignment of U.S. Patent No. 11,925,770 ("the '770 patent") titled "Aspiration catheter systems and methods of use," which the United States

Patent and Trademark Office lawfully and duly issued on March 12, 2024.  A true and correct copy of the '770 patent is attached hereto as Exhibit 5.

## VI. **FIRST CAUSE OF ACTION**

## **(INFRINGEMENT OF U.S. PATENT NO. 10,213,582)**

33.     Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34.     Defendant's products, including at least the Hippo-Cheetah system, infringe at least claim 1 of the '582 patent under at least 35 U.S.C. § 271(a), (b), and (c).

35.     Defendant has directly infringed the '582 patent by making, using, selling, offering for sale, and/or importing into the United States systems and methods that practice one or more claims of the '582 patent.

36.     For example, the Hippo-Cheetah system practices all of the limitations in claim 1 of the '582 patent.  The Hippo-Cheetah system is used for performing a medical procedure at a treatment cite in a cerebral vessel of a patient, as described in its Indications for Use.

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br>**Indications for Use** | Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br>*See PRA Statement below.* |
|---|---|

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

*See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K222786.

37.    The Hippo-Cheetah system is a coaxial system of devices, the assembled coaxial system of devices comprising: a catheter (Hippo) having a catheter lumen and a distal end; and a tapered inner member (Cheetah) extending through the catheter lumen, wherein a distal end of the tapered inner member extends distal to the distal end of the catheter, the tapered inner member having a lumen, as shown in the Q'Apel website pictures below.



*See* https://qapelmedical.com/hippo/.

38.    In operation, the assembled Hippo-Cheetah system is advanced together through the internal carotid artery from a transfemoral access site of the patient, as Q'Apel advertises below.

# When it comes to urgent stroke procedures, speed is everything.

Together, we jump straight in without wasting time on complex prep or navigation hangups. We are setting the standard in trackability for effortless navigation.

So what sets us apart? For starters, we are designed to work together. That's what partners do. With minimal ledge effect, we glide along as a single system, easily tackling turns to get wherever you need us fast. Once there, my novel tip design engages the clot and  you can confirm clot engagement under fluoroscopy.

39.     In operation, the Hippo-Cheetah coaxial system of devices is advanced together after the distal end of the catheter is distal to a petrous portion of the internal carotid artery.

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br>**Indications for Use** | Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br>*See PRA Statement below.* |
| --- | --- |

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

40.     Defendant has knowledge of Route 92 Medical's patents, including the '582 patent, at least based on Fam's former role as a consultant to Route 92 Medical.  While providing consultation services to Route 92 Medical, Fam became familiar with Route 92 Medical's intellectual property, including its patents and patent applications as listed at https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '582 patent no later than the filing of this Complaint.

41.     Defendant has actively induced others to directly infringe the '582 patent by marketing and selling the Hippo-Cheetah system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '582 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Hippo-Cheetah system be used to infringe the '582 patent.  Defendant's acts constitute infringement of the '582 patent under 35 U.S.C. § 271(b).

42.     Defendant's acts constitute contributory infringement of the '582 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Hippo-Cheetah system that constitute material parts of the invention of the asserted claims of the '582 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '582 patent.

43.     Defendant's infringement of the '582 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '582 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

44.     Because of Defendant's infringement of the '582 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

45.     Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## VII. <u>SECOND CAUSE OF ACTION</u>

### <u>(INFRINGEMENT OF U.S. PATENT NO. 10,456,555)</u>

46.     Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45.

47.     Defendant's products, including at least the Hippo-Cheetah system, infringe at least claim 1 of the '555 patent under at least 35 U.S.C. § 271(a), (b), and (c).

48.    Defendant has directly infringed the '555 patent by making, using, selling, offering for sale, and/or importing into the United States systems and methods that practice one or more claims of the '555 patent.

49.    For example, the Hippo-Cheetah system practices all of the limitations in claim 1 of the '555 patent.  The Hippo-Cheetah system is used for performing a medical procedure at a treatment cite in a cerebral vessel of a patient, as described in its Indications for Use.

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br>**Indications for Use** | Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br>*See PRA Statement below.* |
| --- | --- |

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

50.    The Hippo-Cheetah system is a coaxial system of devices, the assembled coaxial system of devices comprising: a catheter (Hippo) having a catheter lumen and a distal end; and an inner member (Cheetah) extending through the catheter lumen, wherein a tapered distal end of the inner member extends distal to the distal end of the catheter, as depicted below.



51.    In operation, the assembled Hippo-Cheetah system is advanced together within a petrous portion of an internal carotid artery.  The Hippo-Cheetah system may be advanced while a guidewire is not present.

52.    Defendant has knowledge of Route 92 Medical's patents, including the '555 patent, at least based on Fam's former role as a consultant to Route 92 Medical.  While providing consultation services to Route 92 Medical, Fam became familiar with Route 92 Medical's intellectual property, including its patents and patent applications as listed at https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '555 patent no later than the filing of this Complaint.

53.    Defendant has actively induced others to directly infringe the '555 patent by marketing and selling the Hippo-Cheetah system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '555 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Hippo-Cheetah system be used to infringe the '555 patent.  Defendant's acts constitute infringement of the '555 patent under 35 U.S.C. § 271(b).

54.    Defendant's acts constitute contributory infringement of the '555 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Hippo-Cheetah system that constitute material parts of the invention of the asserted claims of the '555 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '555 patent.

55.    Defendant's infringement of the '555 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '555 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

56.    Because of Defendant's infringement of the '555 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

57.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## VIII. <u>THIRD CAUSE OF ACTION</u>

## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,646,239)</u>

58.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57.

59.    Defendant's products, including at least the Hippo-Cheetah system, infringe at least claim 1 of the '239 patent under at least 35 U.S.C. § 271(a), (b), and (c).

60.    Defendant has directly infringed the '239 patent by making, using, selling, offering for sale, and/or importing into the United States systems and methods that practice one or more claims of the '239 patent.

61.    For example, the Hippo-Cheetah system practices all of the limitations in claim 1 of the '239 patent.  The Hippo-Cheetah system is used for performing a medical procedure at a treatment cite in a cerebral vessel of a patient, as described in its Indications for Use.

<table>
<tr><td colspan="2">DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br><b>Indications for Use</b></td><td>Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br><i>See PRA Statement below.</i></td></tr>
</table>

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

62.    In operation, the Hippo-Cheetah system is positioned into an advancement configuration, as described in its instructions for preparation and use.

## DEVICE PREPARATION AND USE
### Preparation
1. Gently remove the 072 Aspiration System trays out of the sterile pouch.
2. Remove the tray cap.
3. Remove the Delivery Tool, Rotating Hemostasis Valve, and Flow Switch from the top packaging tray.
4. Remove the top tray from the bottom tray and remove 072 Aspiration Catheter by gently grasping the hub and removing it from its location.
5. Inspect the 072 Aspiration Catheter and Delivery Tool for kinks and other damage.
   CAUTION: If any damage is observed, discard the Catheter or Delivery Tool, and replace.
6. Gently remove the Aspiration Tubing out of the sterile pouch.
7. Flush the 072 Aspiration Catheter and Delivery Tool with sterile heparinized saline.
8. Submerge the entire 072 Aspiration Catheter in a bowl of sterile heparinized saline for a minimum of 30 seconds and no more than 60 seconds to hydrate the hydrophilic coating before use. Repeat for the Delivery Tool.
9. Attach the Rotating Hemostasis Valve to the central lumen hub of the 072 Aspiration Catheter.
10. Attach the Flow Switch to the Rotating Hemostasis Valve. Ensure the Flow Switch is in the "off" orientation.
11. Insert the Delivery Tool into the 072 Aspiration Catheter until approximately 5cm to 10cm of the Delivery Tool exits the distal end of the 072 Aspiration Catheter.

63.    As shown below in the materials from Q'Apel's website, the Hippo-Cheetah system is a system of devices comprising: a catheter (Hippo) having a catheter lumen, an inner diameter and a distal end; and an inner member (Cheetah) sized and shaped to slide within the catheter lumen.

15



64.    The Hippo-Cheetah system's inner member defines a single lumen.

| My measurements | Outer Diameter (OD) 0.068in | French Designation (OD) 5F | Internal Diameter (ID) 0.026in |
| --- | --- | --- | --- |
| Cheetah | Tip Shape Straight | Usable Length 155cm | Distal Hydrophilic Coating 40cm |

65.    The Hippo-Cheetah system's inner member has a distal portion, the distal portion having a first diameter that tapers distally to a second outer diameter that is smaller than the first outer diameter.



66.    The Hippo-Cheetah system's inner member transitions in flexibility from a proximal end of the inner member to a distal end of the inner member, the distal end of the inner member being more flexible than the distal end of the catheter.

16



67.     When the Hippo-Cheetah system is positioned in the advancement configuration, the inner member (Cheetah) extends coaxially through the catheter lumen (of Hippo) until the distal portion of the inner member is positioned distal to the distal end of the catheter and the inner member is held fixed relative to the catheter.



17

68. In operation, the Hippo-Cheetah system's catheter and flexible inner member are concurrently advanced distal to a petrous portion of an internal carotid artery while the system of devices is positioned in the advancement configuration.

69. Defendant has knowledge of Route 92 Medical's patents, including the '239 patent, at least based on Fam's former role as a consultant to Route 92 Medical. While providing consultation services to Route 92 Medical, Fam became familiar with Route 92 Medical's intellectual property, including its patents and patent applications. Moreover, Defendant had knowledge of the '239 patent no later than the filing of this Complaint.

70. Defendant has actively induced others to directly infringe the '239 patent by marketing and selling the Hippo-Cheetah system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '239 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Hippo-Cheetah system be used to infringe the '239 patent. Defendant's acts constitute infringement of the '239 patent under 35 U.S.C. § 271(b).

71.     Defendant's acts constitute contributory infringement of the '239 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Hippo-Cheetah system that constitute material parts of the invention of the asserted claims of the '239 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '239 patent.

72.     Defendant's infringement of the '239 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '239 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

73.     Because of Defendant's infringement of the '239 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

74.     Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## IX. FOURTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 11,871,944)

75.     Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 74.

76.     Defendant's products, including at least the Hippo-Cheetah system, infringe at least claim 1 of the '944 patent under at least 35 U.S.C. § 271(a), (b), and (c).

77. Defendant has directly infringed the '944 patent by making, using, selling, offering for sale, and/or importing into the United States systems and methods that practice one or more claims of the '944 patent.

78. For example, the Hippo-Cheetah system practices all of the limitations in claim 1 of the '944 patent. The Hippo-Cheetah system is used for performing a medical procedure at a treatment site in a cerebral vessel of a patient, as described in its Indications for Use.

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br>**Indications for Use** | Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br>*See PRA Statement below.* |
| --- | --- |

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

79. In operation, the Hippo-Cheetah system is positioned into an advancement configuration, as described in its instructions for preparation and use.

## DEVICE PREPARATION AND USE
### Preparation
1. Gently remove the 072 Aspiration System trays out of the sterile pouch.
2. Remove the tray cap.
3. Remove the Delivery Tool, Rotating Hemostasis Valve, and Flow Switch from the top packaging tray.
4. Remove the top tray from the bottom tray and remove 072 Aspiration Catheter by gently grasping the hub and removing it from its location.
5. Inspect the 072 Aspiration Catheter and Delivery Tool for kinks and other damage.
   CAUTION: If any damage is observed, discard the Catheter or Delivery Tool, and replace.
6. Gently remove the Aspiration Tubing out of the sterile pouch.
7. Flush the 072 Aspiration Catheter and Delivery Tool with sterile heparinized saline.
8. Submerge the entire 072 Aspiration Catheter in a bowl of sterile heparinized saline for a minimum of 30 seconds and no more than 60 seconds to hydrate the hydrophilic coating before use. Repeat for the Delivery Tool.
9. Attach the Rotating Hemostasis Valve to the central lumen hub of the 072 Aspiration Catheter.
10. Attach the Flow Switch to the Rotating Hemostasis Valve. Ensure the Flow Switch is in the "off" orientation.
11. Insert the Delivery Tool into the 072 Aspiration Catheter until approximately 5cm to 10cm of the Delivery Tool exits the distal end of the 072 Aspiration Catheter.

80.     The Hippo-Cheetah system is a system of devices comprising: a catheter (Hippo) having a catheter lumen, an inner diameter and a distal end; and an inner member (Cheetah) sized and shaped to slide within the catheter lumen.



81.     The Hippo-Cheetah system's inner member defines a single lumen.

| My measurements | Outer Diameter (OD) 0.068in | French Designation (OD) 5F | Internal Diameter (ID) 0.026in |
| --- | --- | --- | --- |
| Cheetah | Tip Shape Straight | Usable Length 155cm | Distal Hydrophilic Coating 40cm |

82.     The Hippo-Cheetah system's inner member has a distal portion, the distal portion having a first region with a first outer diameter and a second region distal to the first region, the second region having a second outer diameter that is smaller than the first outer diameter.



83.    The Hippo-Cheetah system's inner member transitions in flexibility from a proximal end of the inner member to a distal end of the inner member, the distal end of the inner member being more flexible than the distal end of the catheter.



84.    When the Hippo-Cheetah system is positioned in the advancement configuration, the inner member (Cheetah) is positioned within the catheter lumen (of Hippo) and the distal portion of the inner member is located outside the distal end of the catheter so the first outer diameter of the first region minimizes a step formed by a leading edge of the catheter.



85.     In operation, the Hippo-Cheetah systems catheter (Hippo) and flexible inner member (Cheetah) are advanced together distal to a petrous portion of an internal carotid artery to the treatment site in the cerebral vessel while the system of devices is positioned in the advancement configuration and the step is minimized.

# When it comes to urgent stroke procedures, speed is everything.

Together, we jump straight in without wasting time on complex prep or navigation hangups. We are setting the standard in trackability for effortless navigation.

So what sets us apart? For starters, we are designed to work together. That's what partners do. With minimal ledge effect, we glide along as a single system, easily tackling turns to get wherever you need us fast. Once there, my novel tip design engages the clot and  you can confirm clot engagement under fluoroscopy.

23

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Food and Drug Administration<br>**Indications for Use** | Form Approved: OMB No. 0910-0120<br>Expiration Date: 06/30/2023<br>*See PRA Statement below.* |
| --- | --- |

510(k) Number *(if known)*
K222786

Device Name
072 Aspiration System

Indications for Use *(Describe)*
072 Aspiration Catheter:
As part of the 072 Aspiration System, the 072 Aspiration Catheter with a compatible suction pump is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset. Patients who are ineligible for intravenous tissue plasminogen activator (IV t-PA) or who failed IV t-PA therapy are candidates for treatment.

86.     Defendant has knowledge of Route 92 Medical's patents, including the '944 patent, at least based on Fam's former role as a consultant to Route 92 Medical.  While providing consultation services to Route 92 Medical, Fam became familiar with Route 92 Medical's intellectual property, including its patents and patent applications.  Moreover, Defendant had knowledge of the '944 patent no later than the filing of this Complaint.

87.     Defendant has actively induced others to directly infringe the '944 patent by marketing and selling the Hippo-Cheetah system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '944 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Hippo-Cheetah system be used to infringe the '944 patent.  Defendant's acts constitute infringement of the '944 patent under 35 U.S.C. § 271(b).

88.     Defendant's acts constitute contributory infringement of the '944 patent under 35 U.S.C. § 271(c). Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Hippo-Cheetah system that constitute material parts of the invention of the asserted claims of

24

the '944 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '944 patent.

89.    Defendant's infringement of the '944 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '944 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

90.    Because of Defendant's infringement of the '944 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

91.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## X. FIFTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 11,925,770)

92.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 91.

93.    Defendant's products, including at least the Hippo-Cheetah system, infringe at least claim 6 of the '770 patent under at least 35 U.S.C. § 271(a), (b), and (c).

94.    Defendant has directly infringed the '770 patent by making, using, selling, offering for sale, and/or importing into the United States systems and methods that practice one or more claims of the '770 patent.

95.     For example, the Hippo-Cheetah system practices all of the limitations in claim 1 of the '770 patent.  The Hippo-Cheetah system is a catheter system comprising a catheter (Hippo) comprising a lumen and a distal end having an opening from the lumen.



96.     The Hippo-Cheetah system comprises a catheter advancement element (Cheetah) comprising: a tubular portion having an inner diameter and an outer diameter; and a tapered tip portion located distal to the tubular portion.  In operation, an alignment point of the catheter advancement element is located just proximal to the tapered tip portion.





| My measurements | Outer Diameter (OD) 0.068in | French Designation (OD) 5F | Internal Diameter (ID) 0.026in |
| --- | --- | --- | --- |
| Cheetah | Tip Shape Straight | Usable Length 155cm | Distal Hydrophilic Coating 40cm |

97.    The Hippo-Cheetah system has an assembled configuration characterized by the catheter advancement element (Cheetah) positioned within the lumen of the catheter (Hippo), wherein the alignment point of the catheter advancement element is substantially aligned with the distal end of the catheter.



98.    In the Hippo-Cheetah system's assembled configuration, the tapered tip portion has at least three points spaced along a length of the tapered tip portion, the at least three points comprising: a distal point of the at least three points located 5 mm proximal from a distal-most end of the catheter advancement element, the distal point having a first bending force; an intermediate point of the at least three points located 12 mm proximal from the distal-most end of the catheter advancement element, the intermediate point having a second bending force; and a proximal point of the at least three points located 13 mm proximal from the distal-most end of the catheter advancement element, the proximal point having a third bending force.

27

99.    The Hippo-Cheetah system has at least two system points along a length of the catheter system, the at least two system points comprising: a first system point of the at least two system points located 19 mm proximal to a distal-most end of the catheter system, the first system point having a first system bending force; and a second system point of the at least two system points located 13 mm proximal to the distal-most end of the catheter system, wherein the second system point is the same or different from the proximal point, the second system point having a second system bending force, wherein a difference between the second bending force and the first bending force divided by a distance between the distal point and the intermediate point equals a first flexibility slope; wherein a difference between the third bending force and the second bending force divided by a distance between the intermediate point and the proximal point equals a second flexibility slope; wherein an average of the first flexibility slope and the second flexibility slope defines an average tip portion flexibility slope; wherein a difference between the first system bending force and the second system bending force divided by a distance between the first system point and the second system point equals a third flexibility slope.

100.    The Hippo-Cheetah system has a ratio of the third flexibility slope to the average tip portion flexibility slope of less than 25.

101.    Defendant has knowledge of Route 92 Medical's patents, including the '970 patent, at least based on Fam's former role as a consultant to Route 92 Medical.  While providing consultation services to Route 92 Medical, Fam became familiar with Route 92 Medical's intellectual property, including its patents and patent applications.  Moreover, Defendant had knowledge of the '970 patent no later than the filing of this Complaint.

102.    Defendant has actively induced others to directly infringe the '970 patent by marketing and selling the Hippo-Cheetah system, knowing and intending that such systems would

28

be used by physicians, customers, and end users in a manner that infringes the '970 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Hippo-Cheetah system be used to infringe the '970 patent. Defendant's acts constitute infringement of the '970 patent under 35 U.S.C. § 271(b).

103. Defendant's acts constitute contributory infringement of the '970 patent under 35 U.S.C. § 271(c). Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Hippo-Cheetah system that constitute material parts of the invention of the asserted claims of the '970 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '970 patent.

104. Defendant's infringement of the '970 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '970 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

105. Because of Defendant's infringement of the '970 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

106. Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

29

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor against Defendant for the following relief:

A.      Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them have infringed each of the '582, '555, '239, '944, and '770 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

B.      Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '582, '555, '239, '944, and '770 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C.      Pursuant to 35 U.S.C. § 284, an award compensating Plaintiff for Defendant's infringement of the '582, '555, '239, '944, and '770 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D.      Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '582, '555, '239, '944, and '770 patents in view of the willful and deliberate nature of the infringement;

E.      Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs;

F.      An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

G.     That Defendant be directed to file with this Court and to serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

H.     That Defendant be required to account to Plaintiff for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiff, by reason of Defendant's acts complained herein;

I.     An award of taxable costs; and

J.     That this Court award such other and further relief as this Court may deem just.

Respectfully submitted,

Dated:  October 7, 2024                       PHILLIPS, MCLAUGHLIN & HALL, P.A.

*Of Counsel*                                  By:*/s/ John C. Phillips, Jr.*
                                              John C. Phillips, Jr. (#110)
Stephen C. Jensen (*Pro Hac Vice             Megan C. Haney (#5016)
Forthcoming*)                                 1200 N. Broom Street
Irfan A. Lateef (*Pro Hac Vice Forthcoming*)  Wilmington, DE 19806
Benjamin J. Everton (*Pro Hac Vice           (302) 655-4220
Forthcoming*)                                 jcp@pmhdelaw.com
Rhett D. Ramsey (*Pro Hac Vice               mch@pmhdelaw.com
Forthcoming*)
**KNOBBE, MARTENS, OLSON & BEAR,**            *Attorneys for Plaintiff Route 92 Medical, Inc.*
**LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Steve.Jensen@knobbe.com
Irfan.Lateef@knobbe.com
Ben.Everton@knobbe.com
Rhett.Ramsey@knobbe.com